IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| IN RE: | ) |
| | ) |
| ROBERT LEE BARBEE, | ) Case No. 21-10562 |
| | ) |
| Debtor. | ) |

## MEMORANDUM

A debtor's motion to avoid a judicial lien under Bankruptcy Code § 522(f) is usually a straightforward matter of valuing the debtor's assets, ascertaining the liens, and performing some mathematical calculations. The wrinkle in this case is that the debtor and his wife own their home as tenants in common for life with a contingent remainder in favor of the survivor – a *sui generis* form of ownership under Alabama law which requires a somewhat different approach. Ultimately, though, having carefully considered the evidence, the briefs and arguments of the parties, and the relevant law related to this case, the court finds under any approach the judicial lien at issue is due to be avoided because there is no non-exempt interest in real or personal property to which the judicial lien could attach.

## Background

This case came before the court for an evidentiary hearing on the debtor's motion (doc. 26) to avoid the judicial lien of creditor Edgefield Florida Properties, LLC. The court admitted the debtor's exhibits 1 through 10 and the creditor's exhibits 1 through 8 without objection. The court also heard testimony from multiple witnesses.

Edgefield is the assignee of a $223,564.87 judgment entered in December 2009 against the debtor in the Circuit Court of Baldwin County, Alabama. (*See* creditor exs. 2, 3, 4, 5, 8). The judgment was recorded in the Probate Court of Baldwin County in January 2010 and revived

1

in September 2019.  (*See* creditor exs. 3, 6, 7).  The debtor filed for chapter 7 bankruptcy on March 24, 2021.

The debtor and his wife own and live in real property located at 3 Cedar Point, Spanish Fort, Alabama.  Their 2009 warranty deed conveyed the property to the debtor and his wife "as tenants in common for the period or term that the grantees shall both survive, and upon the death of either of them, to the survivor of them, together with every contingent remainder and right of reversion . . . ."  (*See* debtor ex. 1).  The debtor and his wife mortgaged the property in 2009 for $289,987.  (*See* debtor ex. 2).  The Cedar Point property is the debtor's homestead, and he can exempt his interest in the property for $15,500 under Alabama's homestead exemption.

According to evidence from the mortgage servicer, the payoff of the mortgage as of July 1, 2021 was $245,241.35.  (*See* debtor ex. 3).  The payoff statement states that "[t]his loan is due for the 04/01/20 payment" and that the monthly interest is $905.16.  (*See id.*).  Subtracting three months and seven days of interest (3/25-6/30), the court finds that the mortgage balance as of the March 24, 2021 petition date was $242,314.67.

The debtor and the creditor both submitted testimony and reports from certified appraisers about the value of the property.  The debtor's appraiser valued the property as of the March 24, 2021 petition date at $299,000 without considering any needed repairs and $197,000 considering repairs.  (*See* debtor ex. 6).  The creditor's appraiser valued the property at $370,000 without repairs and $269,000 with repairs, but that value was as of July 15, 2021.  (*See* creditor ex. 1).  The creditor's appraiser testified that the values as of March 24, 2021 would have been roughly $20,000 less: $350,000 without repairs and $249,000 with repairs.

Both appraisers testified that repairs to the foundation of the house were necessary.  The debtor submitted foundation repair estimates from July and August 2021 for $71,110 and

2

Case 21-10562    Doc 75    Filed 09/28/21    Entered 09/28/21 15:43:09    Desc Main
Document      Page 2 of 8

$97,557 and presented witness testimony supporting those estimates. (*See* debtor exs. 7 and 8). The debtor's appraiser had previously appraised the house in 2019 and testified that there were foundation problems at that time, too, as well as needed roof repairs.

The debtor also submitted a May 2021 roof repair estimate of $29,580. The debtor testified that most of the roof damage was after the petition date from a windstorm. Nevertheless, the debtor's roofing expert (who prepared the estimate) testified that the 22-year-old shingles on the roof at the time of the repair normally have life of 30 years and that the shingles were already brittle.

Legal Analysis

Under Bankruptcy Code § 522(f)(1)(A), the debtor "may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled . . . if such lien is . . . a judicial lien . . . ." A judicial lien impairs a debtor's exemption "to the extent that the sum of – (i) the lien; (ii) all other liens on the property; and (3) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens." 11 U.S.C. § 522(f)(2)(A). "The petition date is the appropriate measuring point to assess the value of the property for a debtor's motion to avoid a lien under § 522(f)." *In re Huff*, No. 11-01342, 2011 WL 5911926, at *1 (Bankr. S.D. Ala. Nov. 23, 2011).

The Cedar Point property is the only property at issue, as there is no evidence that the debtor owns any other real or personal property that is not fully exempt. The debtor argues: (1) that his life estate interest in the property has little to no value, and thus the judgment lien impairs his homestead exemption; and (2) that even valuing his interest under the traditional

3

Case 21-10562    Doc 75    Filed 09/28/21    Entered 09/28/21 15:43:09    Desc Main
Document    Page 3 of 8

valuation approach of *In re Lehman*, 205 F.3d 1255 (11th Cir. 2000), there is no equity to which the judgment lien can attach after accounting for his homestead exemption. The court discusses each argument below.

The debtor's life estate interest

While the debtor's interest in the Cedar Point property is property of his bankruptcy estate, Alabama law determines the nature of that interest. *See In re Livingston*, 804 F.2d 1219, 1221 (11th Cir. 1986). The warranty deed shows that the debtor and his wife took the property as tenants in common for life with a contingent remainder in the survivor, not as joint tenants.

Under Alabama law, a normal tenancy in common does not create rights of survivorship but a joint tenancy does. *See generally* MUDDY WATERS: CONCURRENT OWNERSHIP WITH RIGHT OF SURVIVORSHIP IN ALABAMA AFTER *DURANT V. HAMRICK*, 34 ALA. L. REV. 147 (1983). A joint tenancy with right of survivorship is destructible,[1] and both the life estate and contingent remainder can be reached by creditors. *See, e.g.*, *Durant v. Hamrick*, 409 So. 2d 731, 737 (Ala. 1981). But that is not the case for tenancies in common with a contingent remainder in the survivor.

"A tenancy in common for life with contingent remainder in fee in the survivor differs from a joint tenancy in that the right of survivorship in one tenant in common is not destructible by the act of the other." *See id.* "This form of concurrent ownership can be characterized as creating concurrent life estates with cross-contingent remainders in fee; or a tenancy in common for life with a contingent remainder in favor of the survivor." *Id.* at 736.

---

[1] Except those created between 1965 and 1972, which is not applicable here. *See generally In re Livingston*, 804 F.2d 1219.

Under Alabama Code § 6-9-211, a recorded judgment "shall be a lien in the county where filed on all property of the defendant *which is subject to levy and sale under execution* . . . ." (emphasis added). However, "contingent remainders are not subject to levy and sale." *See Yates v. Guest*, 416 So. 2d 973, 977 (Ala. 1982). The court thus finds that only the debtor's life estate in the property – not his contingent remainder interest – is subject to the creditor's judicial lien. *See id.*; *see also In re Livingston*, 804 F.2d at 1222; *In re Head*, 204 B.R. 1022, 1026 (Bankr. N.D. Ala. 1997); *Matter of Sandefer*, 47 B.R. 133, 139-40 (Bankr. N.D. Ala. 1985).

The court must next value the debtor's life estate interest in the property. The court accepts the report and related testimony of the plaintiff's expert, Robert Pawlowski, that the value of the debtor's life estate interest is $4,972 at most.[2] (*See* debtor ex. 10). The court is of the opinion that this value is on the high end because Mr. Pawlowski used a life expectancy for the debtor of 16 years and did not take into account that the judgment is only valid until December 2029 under Alabama Code § 6-9-190 (judgment cannot be revived more than 20 years after its entry). The only real value of the debtor's life estate is the disruption that the creditor could create related to the property for the next nine years – in practical terms, a nine-year cloud on the title. While the creditor in theory could execute on and exercise its right to possess the debtor's life interest in the property, this is unlikely; unless the creditor were willing to service the sizeable mortgage and otherwise keep up the property, the debtor and his wife would allow it to be foreclosed upon. There was no evidence regarding a market for a nine-year life interest in one-half of a heavily encumbered residence in need of repairs, and the court finds that in fact

---

[2] Mr. Pawlowski testified at length at the hearing on his methodology, which is also detailed in his report. The court will not repeat that analysis here. Mr. Pawlowski used a slightly higher mortgage payoff amount than that determined by the court, but using the lower payoff would still yield an amount that would result in avoidance of the judgment lien.

5

there is none. Because the value of the debtor's life interest is less than his exemption, the court finds that the lien is due to be avoided.

The *Lehman* approach

The creditor argues that the debtor should be stuck with the property's scheduled value of $258,000 (with his interest as $129,000) and that the debtor did not mention any repairs in the schedules. However, the scheduled value is merely an estimate to aid "the trustee in administering the estate by helping him identify assets that may have value beyond the dollar amount the debtor claims as exempt, or whose full value may not be available for exemption because a portion of the interest is, for example, encumbered by an unavoidable lien." *See Schwab v. Reilly*, 560 U.S. 770, 785 (2010). The court believes the best evidence of the value of the property on the petition date is the expert appraiser evidence admitted at trial. The court also believes the debtor's testimony that the amount he listed in the schedules was based on a 2019 appraisal (which was the only appraisal the debtor had at that point). Even if the court accepted the debtor's scheduled value of $258,000, it would still grant the motion. Specifically, $242,314 (the mortgage amount[3]) subtracted from $258,000 leaves $15,686 equity in the property. The debtor's half-interest in the equity would be $7,843, which amount is fully exemptible under Alabama's homestead exemption. *See generally, e.g.*, *In re Hines*, 799 F. App'x 743 (11th Cir. Jan. 27, 2020) (applying *In re Lehman*).

The creditor's appraiser admitted that repairs were necessary to the property and that his $350,000 value did not reflect any repairs. He testified that there were cracks in the foundation

---

[3] Similarly, the court is not bound by the amount owed on the mortgage listed in the schedules. The evidence from the mortgage servicer is the best evidence of the amount due on the mortgage at the petition date.

6

and the driveway when he appraised the property in July 2021. The court rejects the creditor's argument that the court lacks enough information to quantify those repairs as of the petition date. For example, the creditor contends that the $20,000 difference from the July and August estimates shows that the property must have rapidly deteriorated during that time and the repairs would have been much less as of the March 2021 petition date. However, the court finds credible the testimony that the higher estimate reflected repairs that were not included on the lower estimate, namely involving the garage. And the court is of the opinion that it would have taken roughly the same amount of money to repair the foundation problems – which there was convincing and unrefuted evidence existed in March 2021 – in March 2021 as in July or August 2021. The foundation repair expenses would not have changed drastically in those few months. Finally, the court believes the evidence that the debtor had attempted before to "patch" the foundation, that the cracks continued to reappear, and that further "patching" would not fix the problem.[4]

The court accepts the evidence of a required foundation repair cost at $97,557. While the employee who testified about this repair was not the employee who prepared the report (he has since left that company), the employee who prepared the report was training under the testifying witness at the time of the report and the creditor did not object to the admission of the report.

Using the creditor's appraiser's value of $350,000 and accounting for the repair estimate of $97,557 (which included all garage repairs) yields a value of $252,443. That amount minus $242,314 (the mortgage amount) leaves $10,129 equity in the property. The debtor's half-interest of $5,065 is fully exempt. And this calculation does not account for any needed roof repairs. Although the debtor testified that there was roof damage after the petition date, there

---

[4] This also explains why a 2018 foundation repair estimate was much lower than the 2021 estimates.

were at least some roof repairs needed prepetition based on the credible testimony of the debtor's appraiser and the roofing expert's testimony about the condition of the shingles.

The court could stop there, as the value provided by the creditor's appraiser supports granting the debtor's motion. But the court also finds that the debtor's appraiser's value of $299,000 (without repairs) is a better estimate of the actual value of the property as of the petition date. Even using the lower foundation repair estimate of $70,000, the value of the property as of the petition date would be less than the amount owed on the mortgage. Under the *Lehman* approach as well, the motion to avoid is due to be granted.

## Conclusion

To the extent the court has not specifically addressed any of the parties' arguments, it has considered them and determined that they would not alter the result. For the reasons discussed above, the court will grant the debtor's motion to avoid by separate order.

Dated: September 28, 2021

_____
HENRY A. CALLAWAY
CHIEF U.S. BANKRUPTCY JUDGE

8

Case 21-10562    Doc 75    Filed 09/28/21    Entered 09/28/21 15:43:09    Desc Main
Document    Page 8 of 8